UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| EDMUND CONTOSKI,<br><br>                Plaintiff,<br><br>v.<br><br>P. LYNN SCARLETT, in her official capacity as Acting Secretary of the Department of the Interior, UNITED STATES FISH AND WILDLIFE SERVICE, and H. DALE HALL, in his official capacity as director of the United States Fish and Wildlife Service,<br><br>                Defendants. | Civil No. 05-2528 (JRT/RLE)<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

Damien M. Schiff and Robin L. Rivett, **PACIFIC LEGAL FOUNDATION**, 3900 Lennane Drive, Suite 200, Sacramento, CA 95834; and Douglas P. Anderson, **ROSENMEIER ANDERSON & VOGEL**, 210 Second Street N.E., Little Falls, MN 56345, for plaintiff.

Paul D. Lall, **UNITED STATES DEPARTMENT OF JUSTICE**, Environment & Natural Resources Division – WMRS, 601 D Street NW, Washington, DC 20004; and Mary L. Trippler, Assistant United States Attorney, **OFFICE OF THE UNITED STATES ATTORNEY**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for defendants.

Plaintiff Edmund Contoski filed this lawsuit against defendants for their failure to make a final determination on a proposed rule to delist the bald eagle issued in 1999. Defendants include the United States Fish and Wildlife Service ("USFWS"), H. Dale Hall, in his official capacity as Director of the USFWS, and P. Lynn Scarlett, in her

official capacity as the Acting Secretary of the Department of the Interior. Contoski and defendants have filed cross motions for summary judgment. For the reasons explained below, the Court grants plaintiff's motion and denies defendants' motion.

## BACKGROUND

The bald eagle has received protection under the Endangered Species Act (ESA) since 1978. *See* 43 Fed. Reg. 6233 (February 14, 1978) (listing the bald eagle as endangered throughout the lower 48 states except in Michigan, Minnesota, Wisconsin, Washington, and Oregon, where it was designated as threatened). The Act and its implementing regulations prohibit the "take" of any listed species. 16 U.S.C. § 1538(a)(1)(B); *see* 16 U.S.C. § 1532(19) (defining take). In addition, the bald eagle is protected by the Bald and Golden Eagle Protection Act ("Eagle Protection Act"), which also prohibits take of the bald eagle. 16 U.S.C. § 668; *see* 16 U.S.C. § 668c (defining take).

The bald eagle population has increased since its original listing, and in 1999, the USFWS published a proposed rule to delist the bald eagle. Endangered and Threatened Wildlife and Plants; Proposed Rule To Remove the Bald Eagle in the Lower 48 States From the List of Endangered and Threatened Wildlife, 64 Fed. Reg. 36,454 (proposed July 6, 1999). Defendants have not issued a final determination on the proposed rule. In February 2006, the USFWS issued a new notice of the proposed rule to delist, and reopened the comment period. 71 Fed. Reg. 8238 (Feb. 16, 2006). The USFWS recently extended the comment period to June 19, 2006. 71 Fed. Reg. 28293 (May 16, 2006).

Plaintiff Edmund Contoski is the owner of property abutting the shore of Sullivan Lake in Morrison County, Minnesota. In the course of proposing a residential subdivision, Contoski was informed of an active bald eagle's nest on his property. Specifically, the Minnesota Department of Natural Resources issued a letter recommending that there be no development within a 330 feet radius of the nest to ensure compliance with the ESA and the Eagle Protection Act.

Contoski filed this lawsuit on October 31, 2005. He argues that defendants have a non-discretionary duty to issue a final determination regarding the delisting of the bald eagle, and that by failing to do so, defendants have violated the ESA and the Administrative Procedures Act.

## ANALYSIS

The ESA requires that a final determination be made within one year of publication of a rule proposing to determine whether a species is an endangered or threatened species, or to designate or revise critical habitat. *See* 16 U.S.C. § 1533(b)(6)(A); 50 C.F.R. § 424.17(a)(1); *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1181-82 (10th Cir. 1999). In addition, under the Administrative Procedures Act, a plaintiff may seek a court order compelling agency action "unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); *see EEOC v. Liberty Loan Corp.*, 584 F.2d 853, 856 (8th Cir. 1978).

Here, the USFWS published a proposed rule to delist the bald eagle in 1999 but never issued a final determination. As counsel for defendants conceded during oral

argument, defendants' failure to act violates 16 U.S.C. § 1533(b)(6)(A). Defendants argue, however, that plaintiff does not have standing to bring this action, and that the action is prudentially moot because the USFWS has now re-opened the comment period on the proposed rule.

## I.     Plaintiff's Standing To Bring This Action

To establish standing under Article III of the Constitution, a plaintiff must demonstrate that: 1) plaintiff has personally suffered an injury in fact; 2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Here, plaintiff argues that he has suffered an injury in fact because the bald eagle is listed under the ESA and therefore the presence of a bald eagle nest on his property impairs his ability to develop his property. He argues that his injury is traceable to defendants' failure to delist the bald eagle, and that a final determination delisting the bald eagle would remove one regulatory hurdle to development of his property.

Defendants argue that plaintiff's injury is not redressible because even if the bald eagle were removed from the list of species protected by the ESA, the bald eagle would still receive protection under the Eagle Protection Act. Plaintiff responds by arguing that the Eagle Protection Act does not prohibit adverse habitat modification, and therefore development of his property could go forward if protection of the bald eagle under the ESA were removed.

There is no merit to plaintiff's argument that the Eagle Protection Act cannot prohibit adverse modification of bald eagle habitat. Both the ESA and the Eagle Protection Act prohibit the take of bald eagles, and the respective definitions of "take" do not suggest that the ESA provides more protection for bald eagles than the Eagle Protection Act.

Under the ESA, the term "take" means to "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19). The broadest verb is "harm," which is defined as "an act which actually kills or injures wildlife. Such act may include significant habitat modification or degradation where it actually kills or injures wildlife by significantly impairing essential behavioral patterns, including breeding, feeding or sheltering." 50 C.F.R. § 17.3; *see Babbitt v. Sweet Home*, 515 U.S. 687, 697-98 (1995) (holding that this definition of harm rested on a permissible construction of the ESA). Under the Eagle Protection Act the term "take" means "pursue, shoot, shoot at, poison, wound, kill, capture, trap, collect, molest or disturb." 16 U.S.C. § 668c. Because the definition of "take" in the Eagle Protection Act does not include "harm," whether the Eagle Protection Act prohibits adverse habitat modification depends on the interpretation of "disturb," which is the broadest verb used in the definition of "take" in the Eagle Protection Act. The USFWS has not yet defined "disturb" in a final rule.[1]

---

[1] The USFWS published a proposed rule on the definition of the term "disturb" under the Eagle Protection Act. Protection of Bald Eagles; Definition, 71 Fed. Reg. 8265, 8266 (proposed February 16, 2006). The agency has proposed the following definition: "To agitate or bother a
(Footnote continued on next page.)

The plain meaning of the term "disturb" is at least as broad as the term "harm," and both terms are broad enough to include adverse habitat modification. Plaintiff has pointed to nothing in the legislative history or purpose of the Acts that persuades the Court that "disturb" should be interpreted more narrowly than "harm." Therefore, the Court holds that the protection against adverse habitat modification afforded the bald eagle under the Eagle Protection Act is at least as protective as that provided by the ESA.

Nevertheless, the Court holds that plaintiff's injury is redressible because a favorable decision from this Court would likely remove one regulatory barrier to plaintiff's development of his property. *See Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 261-262 (1977). In *Arlington Heights*, respondents sought to build subsidized housing, and respondents filed a lawsuit arguing that petitioner's denial of the necessary rezoning was racially motivated. *Id.* at 256-58. Petitioner challenged respondents' standing to bring the suit. *Id.* at 260-261. The Court acknowledged that a favorable decision would not guarantee that the housing development would be built, but reasoned that rezoning the property would remove "an absolute barrier" to the development. *Id.* at 261. The Court therefore concluded that respondents' injury was redressible. *Id.* at 261-62.

The situation here is similar to *Arlington Heights*. The ESA is a barrier to development of plaintiff's property, and a favorable decision from this Court would

---

(Footnote continued.)
bald or golden eagle to the degree that interferes with or interrupts normal breeding, feeding, or sheltering habits, causing injury, death, or nest abandonment." *Id.*

likely remove that barrier.  It does not matter that other barriers to development continue to burden the property.  As in *Arlington Heights*, the likely removal of one barrier to development establishes that the injury is redressible.  *See also Larson v. Valente*, 456 U.S. 228, 243 (1982) (holding that a favorable decision need not relieve a plaintiff's every injury because the redressibility requirement is satisfied if a favorable decision would relieve one discrete injury).  Defendants' interpretation of the redressability requirement would impose an unreasonably high burden on litigants, and the Court declines to adopt it.[2]

Accordingly, the Court concludes that plaintiff has standing to bring this lawsuit.

## II.   Prudential Mootness Doctrine

Although defendants concede that they have not complied with the mandatory deadlines set forth in the ESA, defendants ask the Court to "exercise its discretion to withhold relief in this case."  The USFWS has reopened the comment period on its proposal to delist the bald eagle, and defendants assert that it would be inappropriate for the Court to compel the USFWS to issue a final determination before it has had an opportunity to examine the comments generated during this comment period.

According to the prudential mootness doctrine, a court may withhold relief based on considerations of prudence and comity for coordinate branches of government.  *See*

---

[2] Defendants also argue that plaintiff's injury is not fairly traceable to defendants.  The regulatory burden imposed on plaintiff's property by the listing of the bald eagle under the ESA is a discrete injury, and the Court concludes that this injury is fairly traceable to the protection defendants give the eagle by maintaining its status as a listed species under the ESA.

*Voyageurs Nat'l Park Ass'n v. Norton*, 381 F3d 759, 765 (8th Cir. 2004); *S. Utah Wilderness Alliance v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997) (explaining that the prudential mootness doctrine has particular applicability in cases where the relief sought is an injunction against the government). In *Voyageurs National Park Ass'n v. Norton*, the Eighth Circuit applied the prudential mootness doctrine in a situation where the National Park Service failed to formally consult with the USFWS before opening eleven bays in Voyageurs National Park to snowmobiles. 381 F.3d at 765. Plaintiff sought the remedy of formal consultation, and the Eighth Circuit concluded the claim was rendered moot because the agency later completed the formal consultation. *Id*.

Unlike *Voyageurs National Park Ass'n*, Contoski has not received the remedy that he seeks, and therefore the doctrine of prudential mootness does not apply. Over five years have passed since defendants first issued the proposed rule, and they are no closer to issuing a final determination now than they were when they closed the comment period in 1999. Even though defendants have reopened the comment period, there is no guarantee that defendants will not continue to delay in issuing a final determination on the proposed rule.

Because defendants have failed to comply with the mandatory deadlines set forth in the ESA, the Court must compel defendants to act. *See* 5 U.S.C. § 706(1). Nevertheless, the Court will consider the equities of the situation when determining the proper date. *See Center for Biological Diversity v. Badgley*, 2000 WL 1513812, *3 (D. Or. Oct. 11, 2000). The information used in the proposed rule is approximately six years old, and the ESA mandates that the agency use the "best scientific and commercial data

available." 16 U.S.C. § 1533(b)(1)(A). Therefore, the Court will allow defendants a reasonable amount of time to consider the information received during the reopened comment period. Specifically, defendants shall issue a final determination within a reasonable period of time, but no later than February 16, 2007, unless defendants present persuasive evidence of just cause for further limited delay.

## ORDER

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment [Docket No. 4] is **GRANTED**.

2. Defendants' Motion for Summary Judgment [Docket No. 12] is **DENIED**.

3. The Court hereby **DECLARES** that:

   a. Defendants have violated 16 U.S.C. § 1533(b)(6)(A) by failing to issue a final determination regarding the proposed rule to delist the bald eagle.

   b. Defendants' failure to issue a final determination regarding the proposed rule to delist the bald eagle pursuant to 16 U.S.C. § 1533(b)(6)(A) constitutes agency action unlawfully withheld in violation of the Administrative Procedures Act that must be compelled.

4. Defendants shall issue a final determination regarding the proposed rule to delist the bald eagle within a reasonable period of time, but no later than February 16, 2007, unless defendants present persuasive evidence of just cause for further limited delay. At the close of the comment period on the proposed rule, defendants shall file

with the Court a status report, which provides an estimate of when the agency will issue the final determination.

     5.    Plaintiff's request for an award of attorneys' fees, experts' fees, and costs is **DENIED**.

DATED:    August 10, 2006  
at Minneapolis, Minnesota.

                s/ John R. Tunheim  
                JOHN R. TUNHEIM  
                United States District Judge